UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE LIVINGSTON,

       Plaintiff,

       v.

FRED MEYER STORES, INC., an
Ohio corporation,

       Defendant.

Civil No. 06-1825-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

This action is brought by Ms. Michelle Livingston (plaintiff), a former employee of

defendant Fred Meyer Stores, Incorporated (defendant).  Plaintiff asserts two claims.  The first

claim is brought under O.R.S. 659A.112 and 659A.118, alleging that defendant discriminated

against plaintiff because of a disability, and/or that defendant refused to reasonably

accommodate her disability.  The second claim asserts the federal equivalent, brought under the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12201, *et seq.,* and alleges that defendant

discriminated against plaintiff because of a disability or refused to reasonably accommodate her disability.


**<u>BACKGROUND</u>**

Plaintiff asserts that defendant discriminated against her by failing to engage in the statutorily-mandated interactive process to address her alleged disability; failing to accommodate her; terminating her employment; and by retaliating against her. Plaintiff's employment with defendant Fred Meyer began on April 14, 2005, when she started her job as a wine steward for defendant's store in Raleigh Hills, Oregon. Her shift was from nine a.m. to six p.m., from Tuesday through Saturday. Plaintiff experiences difficulty with low-light depth perception and determining whether she is driving in the correct traffic lanes. She also has difficulty walking at night and interpreting oncoming lights correctly. Her doctor recommended "that she try to limit her driving to daylight hours as much as possible." Declar. of Dr. Ronald Sasaki, Att. A.

In 2005 plaintiff reported to her supervisor Mr. Russell Lenhart, the store's Food Manager, that she should not drive after dark. Lenhart asked her to obtain verification from her doctor. Doctor Sasaki provided a letter that stated that plaintiff "has specifically complained of depth perception difficulties under low light conditions" and, as noted above, recommended that she should limit her driving to daylight hours. Sasaki Declar., Att. A.

Lenhart passed the letter on to his supervisor, Mr. Gary Catalano, the Store Director. Catalano authorized Lenhart to adjust plaintiff's schedule.

From October 2005 to March 2006 plaintiff drove herself to and from work. She limited her night-time driving, sometimes driving between three and four a.m. when there was less traffic.

Page 2    OPINION AND ORDER

Plaintiff alleges that Catalano commented during this period of her employment that he thought plaintiff's eyes were fine, and that he did not understand why she couldn't work her scheduled hours.  In September 2006 Lenhart was replaced by a new Food Manager, Ms. Holly Quackenbush.  Plaintiff requested a work schedule similar to the one she had worked during 2005 under Lenhart.  Quackenbush discussed the request with Catalano and Ms. Terri Robinson, a representative in defendant's Human Resources department.

Robinson instructed Quackenbush to ask plaintiff to obtain an updated medical letter. Quackenbush did so.  Plaintiff provided a letter from Dr. Sasaki dated October 23, 2006 that was worded identically to the one Dr. Sasaki signed in 2005.  *See* Sasaki Decl., Att. B.

Upon receipt of this letter, Quackenbush requested more information, including identification of plaintiff's condition and further articulation of her request to work during daylight hours.  Plaintiff obtained a third letter from Dr. Sasaki dated November 6, 2006.

This letter added several details to Dr. Sasaki's letter from 2005 and October 2006.  The doctor included observations that plaintiff complained about an "inability to spatially orient under low light conditions," and cannot determine the location of oncoming cars.  *See* Sasaki Decl., Att. C.  The doctor suggested that driving in low light conditions presents a danger to plaintiff and others, and he opined that plaintiff's condition was unlikely to improve.  *Id*. However, none of Dr. Sasaki's letters made any formal diagnoses of night blindness or vision impairment.

Plaintiff presented Dr. Sasaki's third letter to Catalano on November 9, 2006.  That morning Catalano met with plaintiff and stated that he had been unaware there was a schedule change in 2005.  Meanwhile, Quackenbush took Dr. Sasaki's November 6 letter to Robinson,

who presented it to Ms. Cynthia Thornton, defendant's Vice President of Associate Relations. Robinson returned to Catalano and declared that the letter was insufficient. Catalano advised plaintiff that she needed to work her shift as scheduled, until six p.m.

Plaintiff replied, "You know I can't because of my eye condition."

Catalano advised plaintiff to take a bus or a cab. He told her that based on the doctor's letter there was no need to change the schedule. He asked her again if she was going to work her full shift, and she declined.

Catalano warned plaintiff that her refusal would be considered insubordination, and that she could be terminated. Plaintiff and an associate, Ms. Lauri Jo Cash, then met with Mr. Don Edgerly, defendant's Regional Supervisor of Food.

Allegedly, Edgerly was dismissive of Lenhart's previous accommodation of plaintiff, saying of Lenhart, "Shame on him," and allegedly asking plaintiff, "Well, do you feel that Fred Meyer should make concessions for every person that has a disability?"

After plaintiff returned to her department, Edgerly called to advise her that there would be a final determination regarding her work schedule by the end of the day. At about 2:50 p.m., plaintiff was called to Catalano's office. He allegedly said, "I'm going to make this legal."

He asked her if she was going to work until six p.m.

Plaintiff said, "No, I can't because of my eye condition."

He asked a second time, and plaintiff said, "No."

Catalano replied, "Then, I am going to have to fire you for insubordination." He said it was "for not fulfilling" plaintiff's regular schedule.

Plaintiff left his office crying, and Catalano reported that plaintiff had resigned.

Page 4    OPINION AND ORDER

## STANDARDS

**1.    Summary Judgment**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and Co. of San Fran.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

However, the Ninth Circuit has reasoned that courts should require very little evidence to survive summary judgment in an employment discrimination case, because the ultimate question is one that is most appropriately conducted by the fact-finder, upon a full record. *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

## 2.    Disability Discrimination

The ADA prohibits discrimination by certain entities, including private employers, against qualified individuals with a disability and, in some cases, against persons perceived to be disabled. Specifically, it provides that no employer falling within the scope of the ADA "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12112(a); *see also* 42 U.S.C. § 12111(5) (defining employer).

The Ninth Circuit analyzes ADA cases using the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003). As set out under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.

To establish a *prima facie* case of discrimination in violation of the ADA by an employer, a plaintiff must prove: 1) that he or she is a qualified individual with a disability; 2) that he or she has suffered an adverse employment action; and 3) that a causal connection exists between the adverse employment action and the disability. *Hutton v. Elf Atochem N. Am., Inc.*,

273 F.3d 884, 891 (9th Cir. 2001); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th

Cir. 1996).   The requisite degree of proof necessary to establish a *prima facie* case of

discrimination on summary judgment "is minimal and does not even need to rise to the level of a

preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

A "qualified individual with a disability" is identified as "an individual with a disability

who, with or without reasonable accommodation, can perform the essential functions of the

employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  The ADA

defines an individual with a disability as someone who: (1) has a physical or mental impairment

that substantially limits one or more of the individual's major life activities; (2) has a record of

the impairment; or (3) is regarded as having an impairment.  42 U.S.C. § 12102(2)(A).

Once a *prima facie* case is presented by a plaintiff, the burden of production then shifts to

the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment

action.  The plaintiff is then afforded an opportunity to demonstrate that the employer's proffered

reason was pretextual, "either directly by persuading the court that a discriminatory reason more

likely motivated the employer or indirectly by showing that the employer's proffered explanation

is unworthy of credence." *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Oregon's Discrimination Against Disabled Persons in Employment Act (the Oregon Act)

is in part modeled after the ADA and contains language that is similar to the ADA.  *Wheeler v.

Marathon Printing, Inc.*, 974 P.2d 207, 213 n.6  (Or. App. 1998).  The Oregon Act provides that

"O.R.S. 659A.112 to 659A.139 shall be construed to the extent possible in a manner that is

consistent with any similar provisions of the [ADA]."  O.R.S. 659A.139. Oregon's law tracks the

ADA and defines "disability" in an identical manner.  ORS 659A.100; *see also Centennial*

*School Dist. No. 28J v. Or. Bureau of Labor and Industries*, 169 Or. App. 489, 504-506, 10 P.3d 945 (2000) (applying federal jurisprudence interpreting ADA definition of "disability" to Oregon law).

Although Oregon courts analyzing claims under the Oregon Act have rejected the *McDonnell Douglas* burden-shifting approach, *see Callan v. Confed. of Or. Sch. Admin.*, 717 P.2d 1252, 1254 (Or. App. 1986), that approach is maintained for assessing Oregon employment discrimination claims brought in federal court. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1092-93 (9th Cir. 2001). "The standard for establishing a *prima facie* case of discrimination under Oregon law is identical to that used in federal law." *Id.* 237 F.3d at 1087.

## ANALYSIS

Defendant's primary argument is that plaintiff has failed to present a *prima facie* case of discrimination in violation of the ADA by defendant because she cannot show that she is a qualified individual with a disability. This court agrees.

As noted, the ADA defines a qualified individual with a disability as someone who has an impairment that substantially limits one or more of the individual's major life activities, or has a record of the impairment, or is regarded as having an impairment. 42 U.S.C. § 12102(2)(A).

A person with a medical condition, even one that affects his or her choice and range of activities, is not considered disabled under the ADA without a showing that the condition restricts a "major life activity." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 202 (2002); *see also* 42 U.S.C. § 12102(2)(A); O.R.S. 659.400(1) (a plaintiff must also demonstrate that her impairment *substantially limited* a major life activity).

The limitations plaintiff endures because of her difficulty regarding her vision at night are not shown to restrict a major life activity. The evidence presented reveals that plaintiff's limitations involve driving or walking at certain times in low light. Notwithstanding three ambiguous letters from her physician that provided no definitive diagnosis but opined that plaintiff should not drive at night, plaintiff cannot point to evidence that her vision problems *substantially* limit her in any major activity, including working, seeing, or walking.

There is no dispute that she did a "fabulous" job as wine steward, regardless of any vision impairment. There is no dispute that her vision limitations do not preclude her from fulfilling work and other life responsibilities such as reading, interacting with others, or caring for herself and relatives.

She is uncomfortable driving or walking at some times when headlights approach her, but unrefuted evidence establishes that she is capable of doing so, and has done so. Plaintiff does not deny that she did occasionally drive at night because of her work hours. This court concludes that plaintiff's concerns about commuting in low light cannot be construed reasonably as a substantial limitation in any major life activity.

This conclusion rejects the proposition that "driving" by itself qualifies as a major life activity. While some courts have considered that driving could be construed as a major life activity, these decisions are not sweeping or particularly convincing. *See, e.g., Anderson v. N.D. State Hosp.*, 232 F.3d 634, 636 (8th Cir. 2000) (citations omitted) (working is clearly a major life activity, but driving is "not so obvious" – instead, the court gave the plaintiff "the benefit of the doubt," and assumed that both driving and working are major life activities); *Arnold v. Co. of Cook*, 220 F. Supp. 2d 893, 895 n. 3 (N. D. Ill. 2002) (citations and quotations omitted)

(acknowledging that the view that driving is not "major league" may have "made a U-turn");
*United States v. City and Co. of Denver*, 49 F. Supp. 2d 1233, 1253 (D. Colo. 1999) (driving
listed as one of several major life activities); *Norris v. Allied-Sysco Food Serv., Inc.*, 948 F.
Supp. 1418, 1434 n. 13 (N. D. Cal.1996) (jury could have concluded "that, at least in California,
driving is a major life activity").

Seven years ago this court issued an unpublished opinion that stated that the plaintiff in
the case had "raised a question of fact as to whether she suffers from an injury that affects a
major life activity, specifically the life activities of . . . driving . . . .").  *Weiss-Clark v. Kaiser
Found. Health Plan of the NW*, 2001 WL 204823, at *3 (D. Or. Feb.7, 2001).  While this court
acknowledges this statement, it is not viewed as a holding about driving or a ruling essential to
the reasoning in the *Weiss-Clark* decision, and it is not controlling here.

Other more persuasive authorities have concluded that driving is not itself a major life
activity.  *See, e.g., Capobianco v. City of New York*, 422 F.3d 47, 58 (2d Cir. 2005) (driving is
not a major life activity on its own, but could be considered in determining whether plaintiff was
substantially limited in the major life activity of seeing); *Chenoweth v. Hillsborough Co.*, 250
F.3d 1328, 1329-30 (11th Cir. 2001) ("millions of Americans do not drive, millions are
passengers to work, and deprivation of being self-driven to work cannot be sensibly compared to
inability to see or to learn"); *Wyland v. Boddie-Noell Enter., Inc.*, No. 98-1163, 1998 WL
795173, at *3 n. 1 (4th Cir. November 17, 1998) (per curiam); *Colwell v. Suffolk Co. Police
Dep't*, 158 F.3d 635, 643 (2d Cir. 1998) (driving is not a major life activity); *Robinson v.
Lockheed Martin Corp.*, 2007 WL 38345, at *2 (3rd Cir. January 8, 2007) (same).

This court agrees with the First Circuit that until higher courts speak with more clarity on the matter, the act of driving should be viewed as "subsumed" within the major life activity of working. *See Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.*, 258 F.3d 30, 33 n. 4 (1st Cir. 2001) (even if driving at night is a distinct major life activity, it may be reasonably subsumed within the broader context of working and learning). In light of the authorities cited above, this approach appears to be in accord with the prevailing views of the Second, Third, Fourth and Eleventh Circuits.

Plaintiff is not substantially limited in the activity of working. She performed her job as wine steward satisfactorily. Despite counsel for plaintiff's assertions in the briefing and at oral argument, employers are "not required to grant accommodations to allow an employee to commute to work because the ADA solely addresses discrimination with respect to any 'terms, condition or privilege of employment.'" *Pagonakis v. Express, LLC*, 534 F. Supp. 2d 453, 463 (D. Del. 2008) (quoting *Bull v. Coyner*, 2000 WL 224807, at *9 (N. D. Ill. Feb. 23, 2000) and citing 42 U.S.C. § 12112); *cf. Arbogast v. Alcoa Bldg. Prod.*, 1998 WL 551933, at *2 (7th Cir. Aug. 27, 1998) (reasoning that an employer may voluntarily choose to be helpful with respect to providing employees accommodations for commuting); *see also LaResca v. Am. Tel. & Tel.*, 161 F. Supp. 2d 323, 333 (D.N.J. 2001) (courts have held that commuting to and from work is not part of the work environment that an employer is required to reasonably accommodate); *Salmon v. Dade Co. Sch. Bd.*, 4 F. Supp. 2d 1157, 1163 (S. D. Fla. 1998) (rejecting the plaintiff 's claim that the defendant failed to accommodate her disability by transferring her to a school with a shorter commute because a "plaintiff's commute to and from work is an activity that is unrelated to and outside of her job").

In *Coyner*, the plaintiff suffered from retinitis pigmentosa, a degenerative eye disease that rendered him legally blind and, consequently, unable to drive.  When the defendant-employer learned that employees were driving plaintiff to and from work on company time, the practice was prohibited.  The employer also changed plaintiff's schedule so that he had to work nights, even though it was a hardship because of his vision problems.  In upholding summary judgment in favor of the employer, the court held:

> Accommodations are directed at enabling an employee to perform the essential functions of a job.  Activities that fall outside the scope of the job, like commuting to and from the workplace, are not within the province of an employer's obligations under the ADA.  After all, the ADA addresses discrimination with respect to any "terms, condition or privilege of employment." [Defendant], with full knowledge of [plaintiff's] vision problems, may have been insensitive or even malicious in requiring him to work at night.  But [defendant] had no legally-imposed obligation to be thoughtful and certainly no duty to require [its] employees to drive [plaintiff] on company time.  Therefore, [employers] cannot be charged under the ADA with the duty of providing for [employees'] transportation.

*Coyner*, 2000 WL 224807, at 9 (N. D. Ill. February 23, 2000) (citations and emphases omitted).

Plaintiff contends that in this case, defendant had already demonstrated accommodation for plaintiff under supervisor Lenhart in 2005.  But, as in *Coyner*, even if defendant could be construed as having bestowed upon plaintiff a prior accommodation, there are no grounds for viewing that past accommodation as imposing a continuing, legally binding obligation.  What occurred in 2005 was not an ADA-related determination.  Doing more than the ADA required does not obligate an employer to continue doing so.  "Good deeds ought not be punished, and an employer who goes beyond the demands of the law to help a disabled employee incurs no legal

obligation to continue doing so." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1257 (11th Cir. 2001) (citation omitted).

This court would also conclude in the alternative that even if driving were recognized as a major life activity, plaintiff has failed to show that she is substantially limited in that activity. Whether a claimed condition meets the ADA's standard of "disability" must be evaluated in the context of how the condition affects the individual plaintiff. *Williams*, 534 U.S. at 198 (the "determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual . . . . The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis"). Although her occasional difficulties with driving have been documented, plaintiff falls short of showing that she is *substantially limited* in the activity of driving. She is uncomfortable driving at some times when headlights approach her, but she is capable of doing so, and has done so.

Her discomfort with seeing and walking at times when lights approach her also falls short of establishing that she is substantially limited in those activities. There is no dispute that her vision issues do not preclude her from fulfilling work and other life responsibilities such as reading, interacting with others, or caring for herself and relatives. While she might be compelled to exercise extra care while walking at certain times, as she must while driving, such a burden fails to amount to a substantial limitation on any of her major life activities.

Even if plaintiff presented a *prima facie* showing that she were disabled, her claim that she was terminated because of her disability must fail. Plaintiff refused to fulfill her work

schedule, and this decision ended her employment.  She willfully disobeyed her supervisor and refused to work a scheduled shift.  These are legitimate reasons for termination.

To refute these reasons as pretextual, plaintiff must either raise an issue of fact as to whether these reasons are genuine, or must introduce direct evidence of a retaliatory motive. *Villiarimo v. Aloha Island Air, Inc.*, 281 F3d 1054, 1063 (9th Cir 2002).

Plaintiff signed defendant's "Employee Responsibilities Form," which warns employees about insubordination.  Pl. Dep. Exs. 10-13.  Moreover, there is no dispute that plaintiff was warned directly that she faced termination if she refused to work to the end of her shift.  Plaintiff relies upon the fact that defendant had no difficulty "accommodating" plaintiff's scheduling request previously.  However, a former manager's prior "good deed" and willingness to go beyond the demands of the law – or of work schedules and employee manuals – to assist an employee cannot fairly be construed as raising a question of fact supporting a retaliation claim if the "good deed" is subsequently revoked.  It appears undisputed that plaintiff could have kept her job simply by working her assigned hours.

Plaintiff's related claims that defendant failed to engage in the ADA-mandated interactive process, or that she was "perceived as disabled by her employer," are rejected.

First, even assuming that plaintiff could be construed as disabled under the ADA, she never requested an accommodation to assist her in the performance of her job.

A duty to interact arises upon a request for "a reasonable accommodation to assist in the performance of a job" and part of fulfilling that duty (once it arises) requires consulting with the disabled employee "to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation."

There are four steps of the relevant interactive process.  When a qualified individual with a disability has requested a reasonable accommodation to assist in the performance of a job, the employer should: (1) analyze the particular job involved and determine its purpose and essential functions; (2) consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation; (3) in consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and (4) consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.  29 C.F.R. Pt. 1690, App. § 1630.9.

Plaintiff's requests for assistance from her employer pertained directly to her commute. As shown above, employers are not obliged to accommodate commute-related limitations (as distinguished from job-related limitations).  *See LaResca*, 161 F. Supp. 2d at 333-34.

Assuming without deciding that a duty to interact did arise under the facts presented, this court would conclude that defendant met that duty adequately.  The evidence establishes that after plaintiff requested a change in her shift, defendant responded by seeking the information it needed to determine whether it had any duty to accommodate and asking for a medical statement explaining her condition and her limitations.

After plaintiff's managers collected a medical statement that opined about when plaintiff should drive (an activity that had nothing to do with plaintiff's job duties), a more thorough statement was requested.  Plaintiff's second medical letter was referred to the Vice President of

Associate Relations.  This officer considered the notes sufficient to prompt an investigation with

plaintiff regarding a possible accommodation. Thornton Dep. 10:18-25.

She saw no need to send plaintiff for an independent medical examination about her

condition.  Thornton Dep. 12:8-15.  She did not believe plaintiff's medical notes needed

clarifying, because they did not indicate anything about how her condition affected her ability to

do the essential functions of her job.  Thornton Dep. 13:13-23.

Similarly, plaintiff's belated argument regarding whether defendant perceived her to be

disabled must be rejected as well.  Plaintiff's Complaint fails to assert any claim that she suffered

discrimination based upon perceived disability.  The Complaint alleges disability discrimination

as follows:

10. Defendant discriminated against plaintiff because of her disability, in one or more of the
following particulars:

(a) By failing to engage in the interactive process in 2006; and/or

(b) By failing to continue to reasonably accommodate her, by refusing to allow her to continue to
perform the job she had been doing the previous year with a modified work schedule; and/or

(c) By terminating plaintiff because of her disability and/or for requesting an accommodation;
and/or

(d) By retaliating against plaintiff because she had been granted an accommodation the previous
year.

Complaint, ¶ 10.

Similarly, plaintiff's complaint to Oregon's Bureau of Labor and Industries did not allege

a claim of perceived disability.  *See* Dft.'s Reply, Ex. B.  Having failed to exhaust her

administrative remedies with respect to that claim, plaintiff is barred from asserting it in this

action.  *Zimmerman v. Or. Dept. of Justice*, 983 F. Supp. 1327, 1328 (D. Or. 1997).

Page 16    OPINION AND ORDER

Moreover, a "regarded as" claim would fail on the merits. To establish discrimination based on a perceived disability, plaintiff must show that defendant believed that plaintiff had an impairment; that defendant believed that her impairment substantially limited her in a major life activity; that defendant took an adverse employment action against plaintiff; and that there was a causal relationship between the adverse employment action and the perception that plaintiff was substantially limited. *Coons v Sec'y of U.S. Treas.*, 383 F.3d 879, 886 (9th Cir. 2004) (citations omitted).

Even if this claim were properly before the court, defendant would be entitled to summary judgment. There is no evidence that defendant believed that plaintiff suffered from an impairment that substantially limited her in a major life activity.

Plaintiff relies again on the fact that her manager in 2005 allowed her to enjoy a flexible work schedule. This is insufficient evidence that defendant considered plaintiff to be disabled under the ADA or that there was a causal connection between such a belief and plaintiff's termination, which occurred after plaintiff refused to work her scheduled hours.

Plaintiff 's other Claim for Relief is brought under Oregon disabilities statute. As noted above, Oregon's disabilities act is modeled after the ADA and is construed consistently with the ADA.

Specifically, the standard for establishing a *prima facie* case of discrimination under Oregon law is identical to that used in federal law. The *McDonnell* burden-shifting approach is maintained for assessing Oregon employment discrimination claims brought in federal court. For the same reasons as those presented above regarding plaintiff's ADA claims, defendant is entitled to summary judgment on plaintiff's state discrimination claims.

**CONCLUSION**

On the merits presented by defendant Fred Meyers, Inc., in its Motion for Summary

Judgment [22], and for the reasons stated herein, summary judgment is GRANTED as to each of

plaintiff Michelle Livingston's claims.  This action is dismissed with prejudice.

IT IS SO ORDERED.

DATED this  6  day of June, 2008.


_____/s/ Ancer L. Haggerty_____
Ancer L. Haggerty
United States District Judge